# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCUS WHITEHEAD<br>5617 Pine Street<br>Philadelphia, PA 19143<br><br>   Plaintiff,<br><br>  v.<br><br>UNIVERSITY OF PENNSYLVANIA<br>HEALTH SYSTEM<br>1500 Market Street<br>West Tower, Centre Square<br>Philadelphia, PA 19102<br>   and<br>THE TRUSTEES OF THE UNIVERSITY<br>OF PENNSYLVANIA d/b/a<br>Penn Medicine<br>3400 Civic Center Blvd.<br>Philadelphia, PA 19104<br>   and<br>PENN MEDICINE<br>3400 Civic Center Boulevard<br>Philadelphia, PA 19104<br><br>   Defendants. | CIVIL ACTION<br><br>CASE NO.: _____<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Marcus Whitfield (hereinafter referred to as "Plaintiff" unless indicated otherwise) hereby complains as follows against Defendants and avers as follows:

## INTRODUCTION

1. Plaintiff initiates the instant action to redress violations by Defendant of 29 U.S.C. § 206 for unlawful failure(s) to pay overtime in compliance with the Fair Labor Standards Act ("FLSA"), as well as for a retaliatory termination. Plaintiff also pursues claims under state

law(s) for the same types of violations, particularly the Pennsylvania Minimum Wage Act ("PMWA" - 35 P.S. §§ 333.101 *et. seq.*).

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred materials and services in the Greater Philadelphia region.

## PARTIES

5. Plaintiff is an adult residing at the above-captioned address.

6. The University of Pennsylvania Health System ("Defendant UPHS") and The Trustees of the University of Pennsylvania ("Defendant Trustees") operate a network of medical facilities throughout greater Philadelphia, setting policies, goals, inserting management, and overseeing all operations of such entities or business locations. Once such location is the Perelman Center for Advanced Medicine, d/b/a Penn Medicine ("Defendant Penn Medicine") at 3400 Civic Center Boulevard, Philadelphia, PA 19104 (where Plaintiff was employed).

7. Defendants overlap in benefit administration, management, policies, use their names interchangeably, transfer employees interchangeably amongst locations or facilities, and operate as a single enterprise. Defendants are properly considered single, joint and/or integrated employers for the purposes of this lawsuit.

8. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was hired by Defendants effective on or about July 24, 2023; and in total, Plaintiff was employed by Defendants for slightly in excess of one (1) year.

11. Plaintiff was employed by Defendants as a full-time Distribution Attendant until termination effective on or about August 7, 2024.

12. During the course and scope of Plaintiff's employment, he was primarily assigned to the Perelman Center for Advanced Medicine, d/b/a Penn Medicine ("Defendant Penn Medicine") at 3400 Civic Center Boulevard, Philadelphia, PA 19104.

13. Plaintiff had prior supervisors who ceased working for Defendants, but towards the end of his employment, he began being directly supervised by Ryan Edwards ("Edwards"). Virtually any management or directives were by and through Edwards, as opposed to any higher-level management.

14. Edwards appeared to be on a mission to limit or curtail overtime worked by employees in general. He made varying comments in Plaintiff's presence indicating he didn't want overtime worked unless necessary.

15. Plaintiff had a history of working substantial overtime because he was very helpful, volunteered to assist when needed, and Defendants had often been short staffed (even at other physical facilities or locations).

16. Unless he was working overtime or helping in some other way, Plaintiff typically worked from 2 PM to 10:30 AM from Monday to Friday (5 days per week).

17. Defendants were short staffed in June of 2024 and needed to perform a full inventory analysis and accounting at numerous facilities (not just where Plaintiff was employed). Plaintiff thus volunteered to work approximately 22 hours of overtime in the last week of June 2024.

18. On or about June 26, 2024, Plaintiff worked an overtime shift <u>from 7 AM</u> at the Hospital of the University of Pennsylvania ("HUP") until going to his afternoon shift at the Perelman Center.

19. On or about June 27, 2024, Plaintiff worked an overtime shift <u>from 7 AM</u> at the Pavilion of the Hospital of the University of Pennsylvania (the "Pavilion") until going to his afternoon shift at the Perelman Center.

20. On or about June 28, 2024, Plaintiff worked an overtime shift <u>from 7 AM</u> at the Perelman Center until going to his afternoon shift at the Perelman Center.

21. Since Defendants operate as the same organization and enterprise, Defendants utilize staff (nursing, distribution attendants or otherwise) in different locations. Plaintiff thus

4

volunteered to work overtime at any of Defendants' locations and just left it to supervisory staff to coordinate hours, scheduling and payroll.

22. To Plaintiff's surprise, he was not paid on his regular payroll date of July 12, 2024, for shifts he worked in any of the mornings on June 26th, June 27th, or June 28th. Plaintiff learned that Edwards *manipulated and deleted* his punch-in hours from payroll.

23. Plaintiff complained to Edwards on or about July 16, 2024 (after learning what had occurred in more detail) that: (a) he should not have just deleted his clock-in hours; (b) Plaintiff was upset Edwards would not talk with him or any employee before manipulating their work hours on payroll; and (c) Plaintiff wanted an immediate payroll check for "unpaid overtime compensation" (not paid for work weeks earlier).

24. Edwards was initially aggressive with Plaintiff questioning why Plaintiff would work so much overtime, but Plaintiff offered to verify anytime worked, explained everything he had done, and suggested Edwards call other supervisory staff to verify all overtime if desired. Edwards reluctantly told Plaintiff he would put owed overtime into Plaintiff's next payroll check but was unable to process any type of separate payroll check. Edwards, however, provided no explanation to Plaintiff as to why he would delete punch-in or punch-out times of an employee, as questioned by Plaintiff.

25. Upon receipt of his next payroll check during the payroll payout on July 26, 2024 (weeks later), Plaintiff again saw that he was not paid for any overtime compensation he worked <u>nearly a month earlier</u>.

26. Plaintiff has significant family obligations and expenses, had been shorted in excess of $600 in overtime pay for over a month (not paid in 2 prior payroll checks), and he lived paycheck to paycheck. Plaintiff was upset, so he contacted Defendants' corporate personnel and

was informed that Edwards had not submitted any change in pay, overtime, or additional compensation for Plaintiff.

27. During the last week of July of 2024, Plaintiff confronted Edwards. Plaintiff told Edwards: (a) he thought what Edwards was doing was "illegal;" (b) Plaintiff said he was going to complain "every manager above you;" (c) he knew Edwards had gone into his check to cut Plaintiff's hours and others too; and (d) it is a legal claim to not pay an employee overtime pay.

28. Plaintiff in fact sent emails to management and human resources who oversaw Edwards complaining of non-payment of overtime. Plaintiff was finally assured by Mark Minor (management of Edwards) that he would be paid all owed overtime by no later than August 9, 2024 (the next payroll period).

29. Plaintiff had however formed the opinion that Edwards was unscrupulous, tried to avoid paying Plaintiff overtime at all, and Edwards felt he could just adjust hours in employee payroll of Plaintiff or others at will (with no notice or discussion) to make himself look better from a budget standpoint about how he managed overtime of employees under his purview or supervision.

30. Instead of expressing empathy, Edwards was very nasty with Plaintiff from late July of 2024 through early August of 2024 - - presumably because Plaintiff told him what he did was illegal and escalated the matter to numerous layers of Edwards' management.

31. Plaintiff was then terminated by Edwards on or about August 7, 2024, for <u>allegedly</u> not completing some tasks nearly a week earlier.

32. Plaintiff was so busy during his shifts that he had to stock up to 12 departments on multiple floors, help with other tasks, and he even had to help on the dock at times. Plaintiff performed the work of several employees, and he worked very hard.

33. While Plaintiff believes his termination was a complete pretext, to the extent anything was attributed to him as incomplete - - he either could have been warned (as would be the case with other peers) or it would have been expected by a subsequent shift to complete. Nonetheless, Plaintiff believes his termination was for false and retaliatory reasons.

34. Not only was Plaintiff transparently and blatantly retaliated against with a termination from employment for complaining of overtime violations and non-payment of overtime, but Defendants also failed to properly pay Plaintiff for his overtime (at his overtime rate) owed in his post-termination final paycheck on August 2, 2024.

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Unpaid Overtime & Retaliation)**
**- Against all Defendants -**

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff was not properly paid at a rate of time and one half for hours worked over 40 hours per week while in the employ of Defendants (as outlined above), and he remains owed overtime compensation.

37. Plaintiff's termination from Defendants for complaining of unpaid overtime compensation was *per se* unlawful. *See Kasten v. Saint-Gobain Performance Plastics* Corp., 563 U.S. 1, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011)(it is illegal under the FLSA to terminate an employee for verbal or written concerns of unpaid overtime compensation).

38. The non-payment of owed overtime compensation and Plaintiff's termination as aforesaid constitute violations of the FLSA.

# Count II
## Violations of the Pennsylvania Minimum Wage Act ("PMWA")
(Unpaid Overtime Compensation)
- Against all Defendants -

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff was not properly paid overtime as aforesaid, and Plaintiff pursues a claim herein solely for unpaid overtime compensation.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

i. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiffs would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, all unpaid overtime compensation, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld (if determined that there are such benefits) from the date he first suffered retaliation at the hands of Defendants until the date of verdict;

ii. Plaintiff is to be awarded liquidated or punitive damages (in accordance with the Statutes he is suing under), as permitted by applicable law, to punish Defendants for willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

iii. Plaintiff is to be awarded damages for his emotional distress, humiliation and/or pain and suffering as permitted by law (under applicable Statutes);

iv. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

v. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

vi. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Attorney for Plaintiff
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053

Dated: August 21, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Marcus Whitehead : CIVIL ACTION
v. :
:
University of Pennsylvania Health System, et al. : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| 8/21/2024 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 5617 Pine Street, Philadelphia, PA 19143

Address of Defendant: 1500 Market St, West Tower, Centre Square, Philadelphia, PA 19102; 3400 Civic Center Blvd, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Defendants place of business

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/21/2024   *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☒ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Ari R. Karpf, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 8/21/2024   *Attorney-at-Law / Pro Se Plaintiff*   ARK2484 / 91538   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

# CIVIL COVER SHEET

JS 44 (Rev. 04/21)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
WHITEHEAD, MARCUS

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, ET AL.

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION
[X] 3 Federal Question (U.S. Government Not a Party)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
*(For Diversity Cases Only)*

## IV. NATURE OF SUIT
[X] 710 Fair Labor Standards Act

## V. ORIGIN
[X] 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing: FLSA (29USC206)
Brief description of cause: Violations of the FLSA and PMWA.

## VII. REQUESTED IN COMPLAINT:
JURY DEMAND: [X] Yes

## VIII. RELATED CASE(S) IF ANY

DATE: 8/21/2024
SIGNATURE OF ATTORNEY OF RECORD